UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNITED STATES OF AMERICA : | Crim. Action No. 17-254 (FLW) |
| v. : | OPINION |
| VISHALLIE VERASAWMI : | |

**<u>WOLFSON, Chief Judge</u>:**

Before the Court is defendant Vishallie Verasawmi's ("Ms. Verasawmi" or "Defendant") Motion for Sentence Reduction. Ms. Verasawmi requests compassionate release pursuant to the First Step Act ("FSA"), 18 U.S.C. § 3582(c)(1), due to her serious medical conditions. The Government opposes the motion on the grounds that Ms. Verasawmi has not yet begun serving her term of imprisonment and, according to the Government, she has not presented sufficient grounds for a reduction in her sentence on the merits of her application. For the reasons set forth below, I will deny the motion without prejudice to Defendant renewing her motion once she complies with the administrative requirements of the FSA.

**I.   BACKGROUND AND PROCEDURAL HISTORY**

A jury convicted Ms. Verasawmi of one count of conspiracy to commit mail fraud, 18 U.S.C. § 1349, and three counts of mail fraud, 18 U.S.C. § 1341. ECF No. 41. On September 12, 2018, the Court sentenced Ms. Verasawmi to forty-eight months imprisonment and an additional three years of supervised release, with special conditions for mental health treatment. ECF No. 56. Ms. Verasawmi was released on bail and ordered to voluntarily surrender at a later date. She then

1

challenged her sentence on appeal, which the Third Circuit denied on November 27, 2019. *United States v. Verasawmi*, 796 F. App'x 85 (3d Cir. 2019).

Due to certain concerning statements Ms. Verasawmi made at her sentencing hearing, the Court ordered her to comply with the directions of Pretrial Services following her release, ECF No. 61 at 58-59, and Pretrial Services ordered Ms. Verasawmi to report to a hospital for a psychiatric evaluation. Ms. Verasawmi was then involuntarily committed to the Trenton Psychiatric Hospital ("TPH"), where she remained through May 8, 2020, approximately twenty months after the date of her sentencing.

During her commitment at TPH, Ms. Verasawmi tested positive for COVID-19 and was hospitalized on April 4, 2020 with severe respiratory illness. According to her medical records, she suffered from severe lung damage and low oxygen levels. She was intubated on April 5, 2020, and remained on a ventilator for sixteen days. She was then discharged from the hospital on May 6, 2020, and after receiving a final psychiatric evaluation, she was discharged from TPH on May 8, 2020. ECF No. 94, Mtn. at 5. Following a court order reinstating bail, Ms. Verasawmi returned home to her mother's care.

Ms. Verasawmi suffers long-term medical ailments as a result of her COVID-19 infection and subsequent hospitalization. Based on her medical records, she has lung damage that requires ongoing use of supplemental oxygen, and throat damage that includes vocal cord paralysis and subglottic stenosis, a narrowing of the vocal cords that affects her breathing. She received throat surgery on March 16, 2021, to address the narrowing of her vocal cords, but her paralysis apparently persists. She is also at risk of serious heart problems and requires evaluation for pulmonary arterial hypertension. Compounding these ailments, her records suggest that she

exhibits long-term COVID-19 symptoms, including fatigue, episodic coughing, headaches, and migraines.[1]

Ms. Verasawmi also suffers from preexisting medical conditions that have worsened following her COVID-19 infection. She is pre-diabetic and suffers from serious mental illness. At the time of sentencing, she had a history of psychiatric illness, including an attempted suicide. After her involuntary commitment at TPH, she continues to be diagnosed with serious mental illness and remains on multiple psychiatric medications. She now participates daily in a virtual outpatient psychiatric program.

Due to Ms. Verasawmi's medical conditions, the Bureau of Prisons ("BOP") changed the facility at which she was designated to serve her sentence from FCI Dansbury, in Connecticut, to FMC Carswell, a medical facility in Texas. ECF No. 94, Mtn. at 5. She is scheduled to surrender to FMC Carswell on June 21, 2021.

Before filing the instant motion, Counsel moved before the warden at FMC Carswell and Regional Counsel for compassionate release. ECF No. 94, Mtn. at 14. The Acting Reduction in Sentence Coordinator at FMC Carswell responded: "We can not accept Reduction in Sentence Requests for inmates that are not in the Bureau of Prisons custody. Once Ms. Verasawmi arrives at Carswell please resubmit your request for a medical or non-medical criteria noted in BOP Program Statement No. 5050.50, Compassionate Release/Reduction in Sentence: Procedures for Implementation of 18 U.S.C. §§ 3582(c)(1)(A) and 4205(g)." *Id.* Ms. Verasawmi then filed the instant motion on May 11, 2021, seeking a reduction in her sentence pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). The motion requests that Ms. Verasawmi "not be required to surrender to [BOP] custody" and that she be permitted to "remain in the community to continue to treat her serious

---

[1] During the pendency of this motion, Ms. Verasawmi was also diagnosed with pneumonia.

health problems." ECF No. 94, Mtn. at 42. The Government filed a brief in opposition on May 24, 2021, ECF No. 95, and Ms. Verasawmi filed a reply on June 1, 2021. ECF No. 96.

## II. LEGAL STANDARD

A "court may not modify a term of imprisonment once it has been imposed except" in limited circumstances prescribed by statute. 18 U.S.C. § 3582(c); *see Dillon v. United States*, 560 U.S. 817, 825, (2010) ("'[A] judgment of conviction that includes [a sentence of imprisonment] constitutes a final judgment' and may not be modified by a district court except in limited circumstances."); *United States v. Desu*, Crim. No. 18-613, 2021 WL 2012235, at *2 (D.N.J. Apr. 30, 2021). Under one such exception, "the court . . . may reduce the term of imprisonment (and may impose a term of probation or supervised release . . . that does not exceed the unserved portion of the original term of imprisonment)" if, "after considering the factors set forth in [18 U.S.C. §] 3553(a)," the court finds that "extraordinary and compelling reasons warrant such a reduction" and that "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A). The court "may reduce the term of imprisonment" either "upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier."[2] *Id.*

Thus, "a defendant seeking a reduction in h[er] term of imprisonment bears the burden of establishing both that [s]he has satisfied 1) the procedural prerequisites for judicial review, and 2)

---

[2] Congress added the provision authorizing defendants—rather than BOP—to bring motions as part of the First Step Act of 2018. First Step Act of 2018 § 603(b), Pub. L. No. 115-391, 132 Stat. 5194, 5239 (Dec. 21, 2018). Before the First Step Act was enacted, section 3582(c)(1) only authorized BOP to bring motions for a reduction in the term of imprisonment on the defendant's behalf.

4

that compelling and extraordinary reasons exist to justify compassionate release." *United States v. Epstein*, Crim. No. No. 14-287, 2020 WL 1808616, at *2 (D.N.J. Apr. 9, 2020).

### III. DISCUSSION

As a threshold matter, the parties dispute whether Ms. Verasawmi must begin serving her sentence, which she undisputedly has not,[3] before the Court has the authority under the FSA to entertain her motion for compassionate release. I begin by laying out the parties' positions before turning to my analysis. Because I agree with the Government that Ms. Verasawmi must begin serving her sentence before the Court may resolve her motion for compassionate release on the merits, at this stage, I do not reach the question of whether "extraordinary and compelling reasons warrant" a reduction in the term of her imprisonment.[4]

#### A. The Parties' Positions

The parties begin with the text of the statute. Ms. Verasawmi argues that "[t]he plain text of the statute does not require 'current service of a sentence' for the Court to have jurisdiction to reduce a term of imprisonment," ECF No. 96, Reply at 11, and that the "Court should not write in such an exception." ECF No. 94, Mtn. at 13. In contrast, the Government contends that the "plain language of the statute" contemplates "current service of a sentence" because it only authorizes a court to "impose a term of probation or supervised release . . . that does not exceed *the unserved*

---

[3] "A sentence to a term of imprisonment commences on the date the defendant is received in custody awaiting transportation to, or arrives voluntarily to commence service of sentence at, the official detention facility at which the sentence is to be served." 18 U.S.C. § 3585(a). Ms. Verasawmi has not been "received in custody awaiting transportation to," or arrived voluntarily at, FMC Carswell, and as such, I cannot find that her sentence has begun under the standard set forth in section 3585(a).

[4] Although I do not reach the merits, based on the evidence Ms. Verasawmi has submitted, it appears that the reasons she presented could potentially provide grounds for relief as part of a renewed motion under the FSA, but would also have to take into account the conditions at FMC Carswell, a medical facility, and how that facility could adequately meet her medical needs.

*portion of the original term of imprisonment.*" ECF No. 95, Opp. at 6 (Government's emphasis) (quoting 18 U.S.C. § 3582(c)(1)(A)). The statute's reference to an "unserved *portion*" of a sentence, the Government argues, implies that a defendant must begin serving her sentence in order to move the court for a reduction in her "term of imprisonment." *Id.*

The parties also dispute whether the legislative history underlying 18 U.S.C. § 3582(c)(1) supports their competing positions. In 2002, the statute only authorized courts to "reduce the term of imprisonment," but by amendment the same year, Congress added, parenthetically, that courts also "([] may impose a term of probation or supervised release . . . that does not exceed the unserved portion of the original term of imprisonment)." As the Government maintains, a House Report accompanying the 2002 amendment contrasted the authority to "reduce the term of imprisonment" pursuant to 18 U.S.C. § 3582(c)(1)(A), with the authority to "reduce a sentence" pursuant to Federal Rule of Criminal Procedure 35, only the latter of which authorizes courts to "impos[e] . . . a lesser type of sentence." ECF No. 95, Opp. at 11 (citing 21st Century Department of Justice Appropriations Authorization Act, Pub. L. No. 107-273, § 3006, 116 Stat. 1758, 1806 (2002); H.R. Rep. No. 107-685, at 189 (2002)). As such, the Government posits that "reduc[ing] the term of imprisonment" means "shorten[ing]" the term, "not reduc[ing its] severity," ECF No. 95, Opp. at 11, thereby foreclosing Ms. Verasawmi's request that the Court replace her entire sentence of imprisonment with home confinement. Ms. Verasawmi agrees that "a reduction of 'a term of imprisonment' does not include supervision." ECF No. 96, Reply at 15. However, she argues that the 2002 amendment supplemented courts' authority to "reduce the term of imprisonment" by adding the authority to "impose a term of probation or supervised release," *id.*, which would include the term of home confinement she requests. She further argues that, by restricting the period of probation or supervised release to a term "that does not exceed the

6

unserved portion of the original term of imprisonment," Congress merely intended to clarify "'that this provision [is not to] be used to increase the total amount of time that a person's liberty is restricted.'" *Id.* (quoting H.R. Rep. No. 107-685, at 189 (2002)).

Although the Third Circuit has not yet decided whether a defendant must begin serving her sentence before filing a motion pursuant to 18 U.S.C. § 3582(c)(1)(A), the Government argues that courts within, and outside, this district have decided this issue, mostly in the Government's favor. Less than a year ago, a court within this district denied a motion for compassionate release because, the court concluded, section 3582(c)(1)(A) does not authorize a reduction in the term of imprisonment where the defendant has not yet begun serving his sentence. *United States v. Picardo*, Crim. No. 19-401 (SRC), 2020 WL 6501730, at *2 (D.N.J. Nov. 5, 2020). *Picardo* reasoned that "the entire scheme of the provision contemplates that the defendant seeking relief has already begun serving his or her sentence." *Id.* (citing *United States v. Konny*, 463 F. Supp. 3d 402, 404 (S.D.N.Y. 2020); *United States v. Spruill*, Crim. No. 18-22, 2020 WL 2113621, at *3 (D. Conn. May 4, 2020)). The court reasoned further that "[s]ection 3582(c) provides the Court with limited authority to reduce a term of imprisonment," not to grant a "new sentence" by replacing the entire term of imprisonment with a period of home confinement. *Id.* According to the decision, "the legislative history" underlying the 2002 amendment "indicates that the addition of the parenthetical authorizing probation or supervised release provides supplemental authority when a court reduces an imprisonment term, not the power to resentence."[5] *Id.*

Applying *Picardo*, another court in this district likewise concluded earlier this month that section 3582(c)(1)(A) authorizes relief only once a defendant begins serving her sentence. *United States v. Moe*, Crim. No. 17-277 (KSH), Opinion, ECF No. 115 (D.N.J. June 9, 2021). In the ruling,

---

[5] The decision in *Picardo* was not appealed.

the court observed that "[t]he statute is written in a way that contemplates a first-level assessment by the BOP[,] including . . . whether home confinement is appropriate," and that the review must include "a real-time assessment of the conditions specific to the moving defendant's situation." Crim. No. 17-277, ECF No. 114 at 14-15. "Neither can happen," the court noted, "before the defendant actually reports to begin serving h[er] sentence." *Id.* at 15.

Other decisions within and outside this district have reached the same conclusion as *Picardo* and *Moe*. *See, e.g.*, *United States v. Ahmad*, Crim. No. 19-493, 2021 WL 1300288, at *1 (D.N.J. Apr. 7, 2021) (concluding that "because [defendant] has yet to be incarcerated, the Court may not provide the relief requested by Defendant under Section 3582(c)(1)(A)"); *United States v. Desu*, Crim. No. 18-613, 2021 WL 2012235, at *3 (D.N.J. Apr. 30, 2021) (noting "this Court finds persuasive the decisions by other judges in this district finding that the relief offered by Section 3582(c)(1)(A) is not available to defendants who have not begun to serve their sentences") (citing *Picardo*, 2020 WL 6501730, at *2; *Ahmad*, 2021 WL 1300288, at *1-2); *see also United States v. Konny*, 463 F. Supp. 3d 402, 404 (S.D.N.Y. 2020) ("[B]y its plain terms, the section applies only to those defendants who have begun serving their term of imprisonment at a BOP facility."); *United States v. Javed*, Crim. No. 16-601, 2021 WL 2181174, at *3-4 (S.D.N.Y. May 27, 2021) (concluding that because defendant had not yet begun serving his sentence at a BOP facility, his motion pursuant to section 3582(c)(1)(A) was "premature").

On the other hand, Defendant points to several decisions, outside this district, in which courts have granted motions for compassionate release when the defendant was not in BOP custody. *E.g.*, *United States v. Konopka*, Crim. No. 17-616 (E.D. Ill. Sept 10, 2020); *United States v. Austin*, 468 F. Supp. 3d 641, 643-44, 646 (S.D.N.Y. 2020) (granting compassionate release to defendant who was out on bail and not in BOP custody after serving eleven years of his fifteen-

year sentence, which the Second Circuit reinstated after the district court had reversed his sentence and released him from custody); *United States v. Hambrock*, Crim. No. 20-26, 2021 WL 775399, at *2, *5 (E.D. Va. Feb. 19, 2021) (concluding "[n]othing in the plain language of the statute requires the defendant to be in custody presently or to have served any portion of his sentence" and granting motion to defendant who had not yet begun serving his sentence); *United States v. Hussain*, 2020 WL 5910065, at *3 (N.D. Cal. Oct. 6, 2020) (holding that the statute "does not expressly require a defendant to exhaust [his administrative] rights while in custody," and "[n]or does the statute imply that the defendant must be in custody" to do so).

B.     Analysis

For the reasons which follow, I agree with the decisions holding that the defendant must begin serving her sentence before moving the Court for a reduction in her term of imprisonment.

1.     The Text and Scheme of the Statute

Ms. Verasawmi argues that "[t]he plain text of the statute does not require 'current service of a sentence'" in order for this Court to rule on the merits of her motion. ECF No. 96, Reply at 11. However, for the reasons discussed below, the text of the statute is arguably ambiguous as to whether a defendant must begin serving her sentence before a court decides her motion for compassionate release. Where "the text [of the statute] is ambiguous," the Court must examine the broader "statutory scheme" to determine its meaning. *King v. Burwell*, 576 U.S. 473, 493 (2015). Here, Ms. Verasawmi's reliance on a purported omission in the statutory text is ultimately unpersuasive, because the explicit statutory scheme supports a conclusion that a defendant must begin her sentence before moving for compassionate release.

"As in all statutory construction cases, [the court] begin[s] with the language of the statute. The first step 'is to determine whether the language at issue has a plain and unambiguous meaning

9

with regard to the particular dispute in the case.'" *Abraham v. St. Croix Renaissance Grp., L.L.L.P.*, 719 F.3d 270, 276 (3d Cir. 2013) (quoting *Barnhart v. Sigmon Coal Co.*, 534 U.S. 438, 450, (2002)). "When the meaning of statutory text is plain, [the court's] inquiry is at an end." *Roth v. Norfalco, L.L.C.*, 651 F.3d 367, 379 (3d Cir. 2011). However, if the language of the statute is "reasonably susceptible of different interpretations," it may be ambiguous. *Edwards v. A.H. Cornell and Son, Inc.*, 610 F.3d 217, 222 (3d Cir. 2010) (internal quotation marks and citation omitted). When a statute appears to be ambiguous, the court must

> look to other portions of the [Act because s]tatutory interpretation focuses on "the language itself, the specific context in which that language is used, and the broader context of the statute as a whole." *Robinson v. Shell Oil Co.*, 519 U.S. 337, 341, 117 S. Ct. 843, 136 L. Ed. 2d 808 (1997). "A provision that may seem ambiguous in isolation is often clarified by the remainder of the statutory scheme . . . because only one of the permissible meanings produces a substantive effect that is compatible with the rest of the law." *United Sav. Assn. of Tex. v. Timbers of Inwood Forest Assocs., Ltd.*, 484 U.S. 365, 371 (1988).

*Abraham*, 719 F.3d at 276 (citations omitted).

I start with the text of the FSA. While the statutory text "does not require 'current service of a sentence'" in such plain terms, ECF No. 96, Reply at 11, the FSA, however, refers directly to a defendant's partial service of her sentence. Indeed, the statute provides courts with the authority to "impose a term of probation or supervised release . . . that does not exceed the *unserved portion* of the original term of imprisonment." 18 U.S.C. § 3582(c)(1)(A) (emphasis added). As its plain meaning suggests, a "portion" refers to a part of a whole. *See e.g.*, The Oxford English Dictionary Online, http://www.oed.com (defining the word "portion," noun, as "[a] part of any whole; a section, a division; a proportion, a fraction"); Merriam-Webster's Collegiate Dictionary (11th Ed. 2003) (defining the word "portion" as "an individual's part or share of something" or "an often limited part of a whole"). Thus, for defendants who have not begun serving their sentences, there is no "unserved *portion*," *id.* (emphasis added), with which a court may replace a term of probation

10

or supervised release; rather, all of the sentence remains unserved. In that regard, reference to an "unserved portion" of the defendant's sentence creates ambiguity as to whether partial service is a statutory requirement. Because the text of the statute is ambiguous, the Court must examine the statute's broader scheme to ascertain its meaning. *King*, 576 U.S. at 493.

As the *Picardo* court concluded, "the entire scheme of [section 3582(C)(1)(A)] contemplates that the defendant seeking relief has already begun serving his or her sentence." 2020 WL 6501730, at *2. The statute explicitly establishes BOP's role in reviewing requests for compassionate release in the first instance. *See Moe*, Crim. No. 17-00277, ECF No. 114 at 14-15 ("The statute is written in a way that contemplates a first-level assessment by the BOP."). When a defendant "exhaust[s] all administrative rights to appeal a failure of [BOP] to bring a motion on the defendant's behalf," 18 U.S.C. § 3582(c)(1)(A), the defendant necessarily must first appeal through BOP. Similarly, the statute's 30-day expiration provision is triggered only after "the receipt of such a request by the warden of the defendant's facility." *Id.* And, as this case and others have demonstrated, BOP is unable to consider the defendant's request until the defendant reports to begin serving her sentence. *E.g.*, ECF No. 94, Mtn. at 14 (noting FMC Carswell could "not accept Reduction in Sentence requests for inmates that are not in the Bureau of Prisons custody); *Javed*, 2021 WL 2181174, at *4 (same); *Moe*, Crim. No. 17-00277, ECF No. 114 at 15 (noting that BOP review of requests for compassionate release "cannot happen before the defendant actually reports to begin serving h[er] sentence"). Thus, the mechanisms for BOP review that Congress explicitly enacted in the original version of the statute—and again in the First Step Act— imply that a defendant must begin serving her sentence before moving for compassionate release.

If the Court were to adopt Defendant's position, it would render toothless the provisions establishing BOP review. Defendants could simply receive their sentences, request compassionate

release from the warden at their designated facilities, wait thirty days for the warden's denial due to his or her inability to review the request, and then file a motion. And, as other courts have recognized, when drafting the statute "'Congress likely considered'" the "'common scenario'" in which a defendant is "await[ing] incarceration for the first time." *Javed*, 2021 WL 2181174, at *4 (quoting *United States v. Thrower*, 495 F. Supp. 3d 132, 139 (E.D.N.Y. 2020)). As such, the Court will not interpret section 3582(c)(1)(A) in a way that effectively eviscerates BOP's role in the statutory scheme. *See King*, 576 U.S. at 492-93 (citing *N.Y. State Dept. of Social Servs. v. Dublino*, 413 U.S. 405, 419-20 (1973) ("We cannot interpret federal statutes to negate their own stated purposes.")).

Defendant's arguments that Congress may have intended such a result are not persuasive. Defendant cites to statements in the congressional record and provisions of pending legislation indicating that, in enacting the FSA, Congress intended to "'increas[e] the use' of compassionate release and 'expedit[e] compassionate release applications.'" ECF No. 96, Reply at 5-8 (quoting 164 Cong. Rec. H10358 (Dec. 20, 2018); 164 Cong. Rec. S7774 (Dec. 18, 2018); citing COVID-19 Safer Detention Act, S.312 (last Judiciary Committee action June 8, 2021)). Defendant also argues that the FSA's "wait-or-exhaust rule" reflects these purposes and "essentially strips BOP's gatekeeper status." ECF No. 96, Reply at 5. However, these arguments are unavailing because, as discussed *supra*, the explicit text and scheme of the FSA maintains BOP's role in reviewing requests for compassionate release in the first instance. As the court state in *Javed*, "[the FSA] did away with BOP's unilateral ability to deny a prisoner compassionate release but did not remove the BOP from the process entirely." 2021 WL 2181174, at *2.

The Second Circuit's decision in *United States v. Brooker*, 976 F.3d 228 (2d Cir. 2020), to which Defendant cites on this point but which does not address the fundamental legal question at

12

issue in this case, is not to the contrary. *Brooker* addressed the question of whether, following enactment of the FSA's provisions authorizing defendants to file motions for compassionate release, "courts remain bound by U.S. Sentencing Guidelines Manual . . . § 1B1.13 Application Note 1(D) [], which makes the [BOP] the sole arbiter of whether most reasons qualify as extraordinary and compelling." 976 F.3d at 230. In holding that Application Note 1(D) does not apply to applications for compassionate release filed by defendants, *Brooker* noted that the FSA "allowed people seeking compassionate release to avoid BOP *if BOP rejects their motions or fails to act on them within a short time period*" and that "*[w]hen the BOP fails to act*, Congress made the courts the decision maker as to compassionate release." *Id.* at 230, 236 (emphasis added). Defendant's citations to this passage in *Brooker* omit critical references to BOP's role in the statutory scheme. ECF No. 96, Reply at 6. In fact, *Brooker* acknowledges that, under the FSA, "BOP is still given the first opportunity to decide a [motion for] compassionate release." *Id.* at 233.

2. **Legislative History**

The legislative history underlying the 2002 amendment lends additional support to this interpretation. The House Report explained that the amendment provided authority for courts to impose a term of probation or supervised release "when exercising the power to reduce a term of imprisonment." H.R. Rep. No. 107-685, at 189 (2002). Without such "added flexibility," the Report explained, courts may be "reluctant simply to release the prisoner back into society." *Id.* Further, the Report contrasts the authority to "reduce the term of imprisonment," as provided in 18 U.S.C. § 3582(c)(1)(A), with the authority under Rule 35 to "reduce a sentence," only the latter of which authorizes courts to impose "a lesser type of sentence." *Id.* Taken together, these points reveal that the 2002 amendment did not authorize courts to resentence defendants entirely. Rather, the statute authorizes courts to impose probation or supervised release "when . . . reduc[ing] a term

of imprisonment" in order to replace a "portion" of the original term. *See Picardo*, 2020 WL 6501730, at *2 ("[T]he legislative history indicates that the addition of the parenthetical authorizing probation or supervised release provides supplemental authority when a court reduces an imprisonment term, not the power to resentence.").

Moreover, as to timing, Congress added the authority to impose probation or supervised release not exceeding the "unserved portion" of the original term of imprisonment at a time when the statute only authorized BOP to initiate motions for compassionate release. *See* 21st Century Department of Justice Appropriations Authorization Act, Pub. L. No. 107-273, § 3006, 116 Stat. 1758, 1806 (2002); First Step Act of 2018, Pub. L. No. 115-391 § 603(b), 132 Stat. 5194, 5239 (Dec. 21, 2018). Defendants were not authorized to file their own motions until Congress enacted the First Step Act in 2018 and, as discussed *supra*, BOP is unable to initiate a motion for compassionate release until a defendant is in BOP custody. Thus, Congress's reference to the "unserved portion" of a term of imprisonment at a time when only BOP could initiate a motion for compassionate release further evidences Congress's intent that defendants must first begin serving their sentences before a court may consider a motion pursuant to 18 U.S.C. § 3582(c)(1)(A).

### 3. District Precedent

Precedent also largely supports the interpretation adopted here. As discussed *supra*, the overwhelming weight of authority in this district holds that a defendant must begin serving her sentence before a court may rule on her motion for compassionate release. *Picardo*, 2020 WL 6501730, at *2; *Ahmad*, 2021 WL 1300288, at *1; *Desu*, 2021 WL 2012235, at *3; *Moe*, Crim. No. 17-00277, Opinion, ECF No. 115. *Picardo* involved facts that closely resemble those at issue here. The defendant was sentenced to a term of imprisonment plus an additional term of supervised release. 2020 WL 6501730, at *1. Before surrendering to begin his sentence, the defendant

contracted COVID-19 and was hospitalized. *Id.* The court extended his surrender date in order to allow him to recover, and he moved for compassionate release before reporting to begin his sentence. *Id.* For many of the same reasons articulated in Section III(B)(1)-(2) of this Opinion, *supra*, the court denied the motion, holding that because the defendant had not yet begun serving his sentence, he was "not eligible for the relief he seeks under [s]ection 3582(c)(1)(A)." *Id.* at *2.

Nevertheless, Defendant cites to several summary orders within this district granting compassionate release to defendants who were in custody in county, rather than BOP, facilities. ECF No. 94, Mtn. at 15 (citing, *e.g.*, *United States v. Pettit*, Crim. No. 03-845, Order, ECF No. 51 (D.N.J. May 26, 2020)). However, as the court concluded in *Picardo*, these cases "are completely inapposite because the defendants . . . had already begun serving their respective terms of imprisonment and were, in fact, incarcerated, albeit not in the custody of the BOP." 2020 WL 6501730, at *3 (citing to *United States v. Gonzalez*, 451 F. Supp. 3d 1194, 1195 (E.D. Wash. 2020), a case in which the "defendant had begun serving his sentence in a local jail and was awaiting designation to a BOP facility"). Further, to the extent these orders conflict with this Court's conclusion, I do not find these orders persuasive as they were decided summarily without explicitly addressing or analyzing the legal question at issue here: whether a defendant must begin serving her sentence before a court may rule on her motion for compassionate release.[6]

---

[6] Defendant also cites to a brief on this topic in a separate case by the United States Attorney for the District of New Jersey. ECF No. 94, Mtn. at 14. The brief addressed a scenario in which BOP denied a request for compassionate release from a defendant serving a federal sentence in a non-BOP facility. *See* Govt. Ltr. Brief in *United States v. Gentry*, Crim. No. 19-78, ECF No. 98 at 1-2. The brief states that the defendant "can fairly say that he has fully exhausted all administrative rights to appeal BOP's failure—through its conceded inability—to bring a motion on his behalf." *Id.* at 2. This rationale does not support Ms. Verasawmi's position because, unlike Ms. Verasawmi, the defendant in *Gentry* began serving his sentence in a non-BOP facility, and BOP therefore was unable to adjudicate his request. Ms. Verasawmi does not face the same "Catch-22" because she has not begun serving her sentence. *Cf. United States v. Jepsen*, 451 F. Supp. 3d 242, 245 (D. Conn. 2020) (considering compassionate release motion from defendant serving his federal

Furthermore, I am not persuaded by those out-of-circuit decisions that have permitted the filing of a motion for compassionate release when the defendant was not in BOP custody. Indeed, several are factually distinct from this case, and they actually support the rationale adopted here. For example, in *United States v. Austin*, the court reached the merits of a motion for compassionate release filed by a defendant who was not in BOP custody. 468 F. Supp. 3d at 643. However, that defendant had already served eleven years of his original fifteen-year sentence, which the Second Circuit reinstated after the district court vacated the sentence and released the defendant from custody. *Id.* at 642-43. In granting the defendant's motion, the court distinguished cases, such as *United States v. Konny*, 463 F. Supp. 3d 402 (S.D.N.Y. 2020), in which defendants "had been sentenced by their respective courts but had not yet surrendered to federal custody." *Id.* at 644. The court reached the merits based only on "the narrow and exceptional circumstances presented" by the defendant's previous eleven-year term in federal prison. *Id.*; *see also United States v. Thrower*, 495 F. Supp. 3d 132, 138-140 (E.D.N.Y. 2020) (reaching merits of compassionate release motion only in the "'narrow and exceptional situation'" where defendant served a substantial portion of his federal sentence but was not in BOP custody, and distinguishing cases in which defendants "awaited incarceration for the first time after being sentenced in the normal course") (quoting *Austin*, 463 F. Supp. 3d at 644).

Defendant also cites to *United States v. Hambrock*, Crim. No. 20-26, 2021 WL 775399, at *2 (E.D. Va. Feb. 2021), and *United States v. Hussain*, Crim. No. 16-462, 2020 WL 5910065, at *3 (N.D. Cal. Oct. 6, 2020). However, these decisions do not meaningfully address the role Congress established for BOP in the statutory scheme or the implications of interpreting the statute

---

sentence in a non-BOP facility because defendant was in a "Catch-22" insofar as "neither the warden at [the non-BOP facility] nor the BOP will consider his request because of his designation to . . . a non-BOP facility").

to authorize motions pre-surrender. *See Hambrock*, 2021 WL 775399, at *2 (concluding, without further analysis, that "[n]othing in the plain language of the statute requires the defendant to be in custody presently or to have served any portion of his sentence"); *Hussain*, 2020 WL 5910065, at *3 (holding that the statute "does not expressly require a defendant to exhaust [his administrative] rights while in custody," and "[n]or does the statute imply that the defendant must be in custody"). For those reasons, I also do not find these cases persuasive.

In conclusion, based on the overall scheme of the FSA, I find that Ms. Verasawmi must satisfy the "procedural prerequisites for judicial review," and thus, at this stage, I will not proceed to an analysis of whether "compelling and extraordinary reasons exist to justify compassionate release." *Epstein*, 2020 WL 1808616, at *2.[7]

---

[7] Ms. Verasawmi argues that her twenty months in civil confinement constitute an extraordinary and compelling reason to reduce her sentence pursuant to section 3582(c)(1)(A). ECF No. 94, Mtn. at 33-37. However, I am unable to consider this argument until she satisfies the "procedural prerequisites for judicial review," including by beginning to serve her sentence. Further, to the extent Ms. Verasawmi argues that the Court should credit her time in civil confinement to reduce her term of imprisonment, this request is premature for similar reasons. "[T]he Attorney General, acting through the Bureau of Prisons, has the authority to determine whether a defendant is entitled to . . . credit [pursuant to 18 U.S.C. § 3585(b)] in the first instance." *United States v. Romero*, 348 Fed. App'x 803, 805 (3d Cir. 2009) (citing *United States v. Wilson*, 503 U.S. 329, 334 (1992)). District courts do not have the authority to hear an application for credit pursuant to section 3585(b) until "after the defendant begins serving h[er] sentence," *Wilson*, 503 U.S. at 333, and the "defendant has exhausted h[er] administrative remedies by seeking credit from the Bureau of Prisons and Attorney General." *Romero*, 348 Fed. App'x at 80 (citing *United States v. Brann*, 990 F.2d 98, 103-04 (3d Cir.1993)); *Mehta v. Wigen*, 597 Fed. App'x 676, 679 (3d Cir. 2015) ("[T]he computation [of credit] is to be made by the Attorney General, through the BOP, after the defendant begins h[er] sentence."). Here, the Court lacks jurisdiction to hear a request for credit based on Ms. Verasawmi's time in civil confinement because she has not begun serving her sentence and availed herself of the administrative remedies pursuant to section 3585(b). And, I question whether a defendant who has not been detained, and is civilly committed to a psychiatric facility by the State, has a basis for arguing she should receive credit for the time spent in civil commitment.

## IV. CONCLUSION

For the reasons set forth above, Defendant's Motion for Sentence Reduction is **DENIED** without prejudice. Defendant may renew her motion, in accordance with the requirements set forth in 18 U.S.C. § 3582(c)(1), once she is in custody to begin serving her sentence at FMC Carswell. An appropriate form of Order is filed herewith.

Date: June 22, 2021

/s/ Freda L. Wolfson
Hon. Freda L. Wolfson
U.S. Chief District Judge